UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PLUS ONE, LLC,

        Plaintiff,

v.

CAPITAL RELOCATION SERVICES L.L.C.,

        Defendant.

Case No. 23-cv-2016 (KMM/JFD)

**ORDER**

---

    This matter is before the Court on Defendant Capital Relocation Services L.L.C.'s Motion to Compel Discovery and for Protective Order (Dkt. No. 131) and Plaintiff Plus One, LLC's Motion to Compel Discovery (Dkt. No. 207). Plus One, LLC ("Plus") is suing Capital Relocation Services L.L.C. ("CapRelo") for misappropriation of trade secrets, breach of contract, tortious interference with contract, and tortious interference with business opportunity, among other claims. (*See* Am. Compl. ¶¶ 86–184, Dkt. No. 50.) With respect to the misappropriation-of-trade-secrets claim, Plus contends that CapRelo misappropriated trade secrets from Plus's "Point C" employee-relocation-benefits-management software to develop a competing product, "CompanionFlex." Plus further contends that CapRelo used CompanionFlex to solicit business from the parties' common customer, Walmart, and other potential customers. The breach-of-contract claim is founded on a nondisclosure agreement ("NDA") between Plus and CapRelo, pursuant to which Plus shared trade-secret information with CapRelo.

1

Through CapRelo's motion, CapRelo seeks to compel Plus to supplement its responses to Interrogatories No. 2 and 12 and a protective order staying depositions until Plus has identified its alleged trade secrets with reasonable particularity. Through Plus's motion, Plus asks the Court to compel CapRelo to produce documents responsive to Requests for Production of Documents No. 9, 10, and 30.

I.   **CapRelo's Motion to Compel Discovery and for Protective Order**

In CapRelo's original motion, CapRelo sought to compel Plus to supplement its responses to Interrogatories No. 2 and 12 and for a protective order staying depositions until Plus identified its trade secrets with more particularity.

At the hearing on the motion, CapRelo clarified that it was asking Plus to (1) identify each distinct trade secret that it was claiming and (2) identify the source code for each claimed trade secret. Plus explained—for the first time—that there are 16 trade secrets at issue. According to Plus, there are seven distinct trade secrets and one "combination" trade secret—each of which has two parts—for a total of 16 trade secrets. Eight of the asserted trade secrets are source-code-based; the other eight are not. For lack of a better description from Plus, the Court referred to the non-source-code trade secrets at the hearing as "something else." With respect to the source-code trade secrets, CapRelo suggested that its expert, Mark Lanterman, could examine Plus's source code on a standalone computer at Plus's offices, following the source-code protocol in the protective order.

At the conclusion of the hearing, the Court denied the motion as to Interrogatory No. 12 and held the remainder of the motion in abeyance. The Court subsequently issued a short, written order with interim instructions and deadlines to allow Mr. Lanterman to

review the source code. The Court stayed depositions until further order, therefore effectively granting the protective-order component of the motion.

What remains before the Court is whether Plus should be compelled to supplement its trade-secret disclosure. In an August update letter emailed to the Court, Plus described a 104-page chart that details its trade secrets, which it created in response to the Court's order and produced to CapRelo. Plus also described the inspection of its Point C product and source-code library by CapRelo and Mr. Lanterman. CapRelo submitted a separate update letter, in which it complained that the lengthy disclosure and inspection process only hampered its ability to understand the trade secrets at issue. CapRelo did not take issue with Plus's identification of its source-code trade secrets. But, according to CapRelo, Plus has not identified its *non*-source-code trade secrets. When the source code is removed from the descriptions in Plus's trade-secret disclosure, CapRelo contends, only functions and outcomes remain.

Plus emailed another update letter to the Court on October 16, 2024. In that letter, Plus expressed its intent to narrow the scope of its asserted trade secrets, which Plus believes may reduce or eliminate CapRelo's concerns.

"In a suit for misappropriation of trade secrets, the plaintiff must specify what information it seeks to protect." *Fox Sports Net N., LLC v. Minn. Twins P'ship*, 319 F.3d 329, 335 (8th Cir. 2003). A plaintiff must describe its trade secrets with the same specificity expected at summary judgment or trial. *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999). When the trade secret involves software, a plaintiff must provide details such as source code and the specific designs, methods, and processes that

3

underlie the public functionality. *See NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-CV-8829, 2020 WL 2836778, at *14–15 (N.D. Ill. May 31, 2020). The plaintiff must "separate the secrets from the non-secrets," specify "what was stolen," and describe what the trade secrets are, not what they do. *Id.* at *11, 13. It is "not a Court's job to parse out the trade secrets from the public-facing functions." *Id.* at *11. A description of what a function *does* rather than what it *is* does not suffice; in other words, the plaintiff must describe "the underlying, secret methods of accomplishing those functions." *Id.* at *14. Although *NEXT Payment* was decided on summary judgment, it illustrates the specificity with which trade secrets must be described during discovery, as well as the risk if they are not. *See Porous Media*, 187 F.R.D. at 600.

CapRelo asserts that Plus has not adequately identified certain trade secrets because Plus describes only what the output looks like, not the means by which that output is generated. CapRelo suggests that the "something else" trade secrets may not, in fact, exist. That is certainly possible and could explain why Plus intends to further amend its trade-secret disclosure to narrow the scope of its asserted trade secrets.

Since the hearing on CapRelo's motion, Plus has allowed CapRelo and its expert to inspect its Point C product and source-code library, created and produced a 104-page chart describing its asserted trade secrets and explaining how each trade secret operates, and identified by Bates number the documents constituting and identifying its asserted trade secrets. Plus has recently expressed its intention to further specify and narrow the trade secrets at issue. Given these developments, the Court will deny as moot CapRelo's motion to compel Plus to further supplement its trade-secret descriptions. Plus has supplemented

4

its trade-secret descriptions, and will again. The Court will not review each iteration of Plus's trade-secret disclosure to determine whether it meets CapRelo's standards of sufficiency.

## II.     Plus's Motion to Compel Discovery

Plus moves to compel CapRelo to produce documents in response to Requests for Production No. 9, 10, and 30. These three requests ask for customer lists, customer communications, marketing presentations, and business proposals related to CompanionFlex.

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts consider numerous factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

If a party believes that the opposing party has failed to respond to discovery or served insufficient responses, it may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party must make a threshold showing of relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). Once relevance is shown, then the burden shifts to the opposing party to show either that the discovery is not relevant or that it is unduly burdensome. *Patterson Dental Supply, Inc. v.*

5

*Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223625, at *20 (D. Minn. June 17, 2020); *St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

### A.     Request for Production No. 9

Plus's Request for Production No. 9 asks CapRelo to produce "[a] list of all CapRelo Prospective Customers or targeted Customers for the provision of CompanionFlex, including the date that each Prospective Customer was identified as a prospective customer and the date and manner by which each Prospective Customer was contacted by anyone acting on behalf of CapRelo." (Talcott Decl. Ex. A, Dkt. No. 210-1.)

Plus argues that a list of prospective or targeted customers is relevant and proportional to its misappropriation-of-trade-secrets claim, breach-of-contract claim, and damages. CapRelo responds that information about all prospective customers of CompanionFlex is neither relevant nor proportional and that CapRelo has already identified and produced documents related to the two customers who have entered into contracts to use CompanionFlex.

The Court denies the motion to compel a list of prospective or targeted customers. A list of all potential customers, regardless of whether they have been contacted by CapRelo, does not provide the information that Plus claims it needs. If CapRelo has not communicated with a potential customer, that potential customer has not been given any information about CompanionFlex and the customer's identity is irrelevant. If a potential customer has been contacted, that communication would fall under Request for Production No. 10, to which the Court now turns.

6

B.     **Request for Production No. 10**

Request for Production No. 10 asks for "[a]ll documents and communications showing CapRelo's efforts to solicit CompanionFlex to any customer and/or prospective customer, including but not limited to agreements, requests for proposals, and/or licenses provided to any customer and/or prospective customer." (Talcott Decl. Ex. A, Dkt. No. 210-1.)

Plus argues that CapRelo's communications to potential customers are relevant to the misappropriation claim if the communications used or disclosed Plus's trade secrets that are allegedly embodied in the CompanionFlex product. Plus contends the communications are also relevant to its breach-of-contract claim because responsive documents could show that CapRelo breached its nondisclosure agreement with Plus by using or disclosing Plus's trade secrets to third parties. Finally, Plus argues, responsive documents could be relevant to damages in that the communications could reflect how potential customers valued each of the CompanionFlex features that allegedly contain Plus's trade secrets.

CapRelo responds that communications with all prospective customers is neither relevant nor proportional. CapRelo has agreed to produce documents for the two customers who have contracted to use CompanionFlex. As to Plus's asserted damages, CapRelo argues that damages would be measured by either Plus's actual loss (*i.e.*, lost profits) or the amount of unjust enrichment caused by the misappropriation, which would be measured by any revenues that CapRelo actually obtained.

7

The Court finds that responsive documents are relevant and proportional to Plus's breach-of-contract claim, but not to the trade-secret-misappropriation claim or damages. Beginning with the misappropriation claim, relevant and discoverable information for such a claim may be limited to the customers that a plaintiff reasonably believes were actually "obtained as a result of the alleged wrongful conduct." *Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*, No. 11-CV-2226 (DSD/LIB), 2012 WL 1633259, at *4 (D. Minn. Apr. 10, 2012). In *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223625 (D. Minn. June 17, 2020), the plaintiff sought communications from the defendant as to both existing and prospective customers. *Id.* at *22. The court denied the "overly expansive discovery" in part because the requests were not limited to communications that mentioned the plaintiff's confidential information or defendant's use of that information. *Id.* at *24. Here, the merely prospective customers were not obtained as a result of the alleged misappropriation, nor is Request for Production No. 10 limited to communications mentioning or using Plus's asserted trade secrets.

Turning to damages, Plus's showing is scant. Plus cites no authority for its statement that a communication reflecting a potential customer's valuation of a particular CompanionFlex feature could be relevant to determining the value of Plus's asserted trade secrets. Rather, any damages for unjust enrichment or lost profits would be measured by the contractual terms and resulting revenue that CapRelo actually obtained.

Plus's breach-of-contract claim is a different matter. If CapRelo disclosed Plus's confidential and trade-secret information to prospective customers, that would be relevant to Plus's claim that CapRelo breached the NDA. The NDA prohibits CapRelo from

8

disclosing to third parties any of Plus's confidential information that CapRelo received and reviewed pursuant to the NDA. (Compl. Ex. A ¶ 4, Dkt. No. 1-1.) Responsive documents could show that CapRelo breached the NDA by improperly using or disclosing Plus's confidential or trade-secret information to third parties (potential customers) for a purpose not permitted by the NDA (gaining business). The communications are therefore relevant to the breach-of-contract claim. The discovery is also proportional. If an unauthorized disclosure occurred in a communication to a prospective client, the evidence would be that very communication. The discovery would be important in resolving an important issue, and CapRelo has not shown the discovery would be unduly burdensome or expensive to produce.

CapRelo has shown, however, that the documents responsive to Request for Production No. 10 would likely contain highly sensitive business information and that an amendment to the existing Amended Protective Order is therefore warranted. Specifically, a provision allowing CapRelo to designate discovery produced as a result of this Order as Outside Counsel's Eyes Only should be added. Documents designated as Outside Counsel's Eyes Only will be accessible only to outside counsel and experts, and explicitly not accessible to a party's Designated Party Representatives, as that term is defined by the Amended Protective Order. Accordingly, the Court directs the parties to meet and confer about the precise provision to be added and to submit a stipulation and proposed protective order for the Court's consideration within 14 days.

### C. Request for Production No. 30

Request for Production No. 30 asks for "[a]ny marketing presentations and/or business proposals developed by CapRelo and/or JK Moving that mention, relate to, reference, or describe the benefit(s) of CompanionFlex, including all documents and communications mentioning, relating to, or referencing any such marketing presentations and/or business proposals." (Talcott Decl. Ex. B, Dkt. No. 210-2.)

The parties make essentially the same relevance and proportionality arguments for Request for Production No. 30 that they made for No. 10. The Court similarly finds that responsive documents are not relevant or proportional to Plus's trade-secret-misappropriation claim or to damages, but are relevant and proportional to the breach-of-contract claim. With respect to the misappropriation claim, Request for Production No. 30 is not limited to marketing presentations and business proposals given to customers who were actually procured as a result of the alleged misappropriation, nor is the request limited to marketing presentations and business proposals that mention or use Plus's asserted trade secrets. In addition, Plus has not shown how the marketing presentations and business proposals would be relevant to the question of damages.

Responsive documents could be relevant, however, to Plus's breach-of-contract claim. If CapRelo disclosed Plus's confidential and trade-secret information in marketing presentations or business proposals for CompanionFlex, those materials would be relevant to Plus's claim that CapRelo breached the NDA through those very disclosures. The discovery is also proportional. If an unauthorized disclosure was made in marketing materials or a business proposal, the evidence would be that very document. The discovery

10

would be important to resolving a central issue in the case, and producing responsive documents would not be unduly burdensome or expensive. The Outside-Counsel's-Eyes-Only provision would also apply to documents produced in response to Request for Production No. 30.

### III. Remaining Pretrial Deadlines

On September 13, 2024, the Court issued an order staying discovery deadlines and advised the parties that the Court would issue an amended scheduling order setting specific deadlines after the parties' discovery disputes were resolved. The Court will issue a separate amended pretrial scheduling order lifting the stay of depositions and extending the remaining dates and deadlines.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Capital Relocation Services L.L.C.'s Motion to Compel Discovery and for Protective Order (Dkt. No. 131) is **DENIED** as to Interrogatory No. 12, **GRANTED** as to a protective order staying depositions until further order of the Court, and **DENIED AS MOOT** as to further amendment of Plus's trade-secret disclosure.

2. Plaintiff Plus One, LLC's Motion to Compel Discovery (Dkt. No. 207) is **DENIED** as to Request for Production No. 9 and **GRANTED** as to Requests for Production No. 10 and 30.

3. The parties shall meet and confer about an Outside-Counsel's-Eyes-Only provision to be added to the Amended Protective Order and submit a stipulation and proposed protective order to the Court within 14 days.

4. A separate amended pretrial scheduling order will be issued.

Date: October 29, 2024   *s/ John F. Docherty*
                          JOHN F. DOCHERTY
                          United States Magistrate Judge