UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Plus One, LLC, | Case No. 23-cv-2016 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Capital Relocation Services, LLC | |
| Defendant. | |

---

Before the Court is a Motion for Sanctions (ECF 177) filed by Defendant Capital Relocation Services L.L.C. ("CapRelo"). For the reasons that follow, the motion is **DENIED**.

**I.    Background**

In this trade secret case, CapRelo is being sued by Plaintiff Plus One, LLC ("Plus One"). Plus One and CapRelo are third-party service providers that help businesses manage employee relocation. *See* ECF 50 (First Am. Compl. ("FAC")) ¶ 11. Plus One makes a software application called "Point C" that helps companies offer flexible relocation benefits to their employees. *See id*. ¶¶ 17–38. Essentially, Point C converts relocation dollars allocated by an employer into a credit-based system that lets a relocating employee pick and choose between various available relocation benefits. *See id*. CapRelo offers its own relocation software called "CompanionFlex," which also utilizes a credit-based pricing system for relocating employees. *See, e.g.*, *id.* ¶ 70. In short, the companies are competitors with competing products.

1

This litigation follows a collaboration between Plus One and CapRelo on behalf of Walmart. Walmart wished to integrate Point C into its employee relocation systems, and asked CapRelo, then its relocation benefits manager, to assist in that process. *Id*. ¶¶ 46, 50. The two companies entered into a non-disclosure agreement in March 2021, pursuant to which Plus One provided certain information to CapRelo about the operation of Point C to facilitate their mutual work on behalf of Walmart. *Id*. ¶ 51. CapRelo's launch of its own, competing CompanionFlex software is alleged to have occurred during the time that Plus One was sharing confidential information about Point C, pursuant to this NDA. *Id*. ¶ 70. In essence, Plus One accuses CapRelo of using its access to the Point C software product to misappropriate trade secrets that power the program and incorporate them into CompanionFlex. Plus One alleges that after CapRelo launched CompanionFlex, Walmart terminated its agreement for the integration of Point C and instead switched to CompanionFlex. *Id*. ¶¶ 79-80.

Plus One's claims include misappropriation of trade secrets, breach of contract, tortious interference with contract, and tortious interference with business opportunity. *Id*. ¶¶ 86–184. Plus One filed its original complaint in this Court on June 30, 2023. ECF 1. After CapRelo moved to dismiss that complaint (ECF 13), Plus One filed the operative FAC (ECF 50). In the amended pleading, Plus One made a number of changes and generally fleshed out its allegations. Relevant to CapRelo's pending motion, some of these changes involved more fulsome allegations about what CapRelo had "access" to in the Point C software during the time that the two companies were cooperating under the NDA.

In some instances, these access allegations remained unchanged between the original and amended complaints. For example in both complaints, Plus One alleges that a CapRelo representative had

> extensive access to the inner workings of Point C during her time at both CapRelo and Walmart, which included technical documents, underlying system architectures, interfaces, components, API specifications, and internal presentations explaining the operability and functionality of Point C, such as Point C's innovative exception-eliminating platform and credit-based benefits selection system.

ECF 1 ¶ 125; FAC ¶ 149. But in the Amended Complaint, Plus One further alleges that the same representative had

> access to the Trade Secrets during her time at both CapRelo and Walmart, which included technical documents, underlying system architectures, interfaces, components, *algorithm*, *source code*, API specifications, and internal presentations explaining the operability and functionality of Point C, such as Point C's innovative exceptions-eliminating platform and credit-based system.

FAC ¶ 66 (emphasis added to highlight additional verbiage). The FAC included other allegations and statements concerning source code that the Court will not enumerate here.

CapRelo then moved to dismiss the FAC. ECF 58. During a hearing on that motion, counsel for both sides discussed the allegations related to source code access. For instance, counsel for Plus One asserted this access in unequivocal and highly specific terms. *See, e.g.*, ECF 95 (Hr'g Tr.) 45:13–46:1 ("CapRelo, the defendant, had two-years-plus access to the inner workings of our software, the source code, the API . . . . They had two years of access, invasive access, to our code"). Counsel for CapRelo, meanwhile, resisted the

3

suggestion that the FAC provided a sufficiently clear statement about *what* was allegedly accessed, complaining that the allegations remained too vague and uncertain to survive dismissal and suggesting that the mentions of source code access were cursory and not credible. *See, e.g.*, *id*. (66:10–12) ("The only allegations of access we have, Your Honor, is this very broad, nonspecific lead-in language where Plus describes its trade secrets."); *see also id*. 64:11–14 ("[I]f CapRelo accessed Plus [One]'s source code, evidence of that would be readily available. It's simply not true. You would have access logs. You would have user credentials. You would be able to see[.]").

The Court ultimately expressed its belief that the FAC very clearly alleged access to source code and other inner workings of Point C, undermining CapRelo's efforts to over-generalize the FAC's claims in favor of dismissal. *Id*. 11:1–7 (positing that FAC did not merely allege misappropriation of the "big picture" or "model" of Point C, but further alleged the misappropriation of "source code, algorithms, software, . . . the very things that [Plus One uses] to build the model, their secret sauce that enabled the building"). Against this backdrop, the Court denied CapRelo's motion from the bench based on what it identified as a number of factual disputes unamenable to disposition on the pleadings under Rule 12. *Id*. 77:8-18 (noting that the question of what CapRelo had access to presented a "classic fact dispute" that the Court would not "resolve in favor of the defendants at this stage").

Unsurprisingly, the issue of source code access did not go away. During discovery, Plus One identified source code embodying Point C features among the trade secrets

4

misappropriated by CapRelo. *See* ECF 136-2 (Plus One Suppl. Resp. to CapRelo's First Interrogatories) at 55–119. CapRelo then served an interrogatory on Plus One seeking the factual basis for Plus One's contention that CapRelo had access or visibility to source code embodying Point C's features. *See* ECF 181 (Ex. A to Landy Decl. (CapRelo's Interrogatory No. 12)). Unsatisfied with Plus One's sprawling answer to this interrogatory, *see id*. at 4–9, and objecting to that answer as nonresponsive, CapRelo moved to compel a clearer statement, *see* ECF 133. During a May 2024 hearing on that motion, Magistrate Judge John F. Docherty, made a pointed inquiry of Plus One about the means of access to source code that Plus One was alleging, and received the following response:

> **JUDGE DOCHERTY**: Well, I want to be clear, though, did they have direct access to the source code or did they simply have enough information that they could reverse engineer the source code?
>
> **COUNSEL FOR PLUS ONE**: We believe—it is our understanding that the latter is the case here. Where everything the—as your cake analogy alluded to. They're provided the ingredients. They weren't provided the direct instructions. But those ingredients compiled together, there's only one way to make a cake for the most part. So what we're seeing is, is by having these credentials and having these access—and it goes beyond just the materials that were provided. It's the communications that were going on between Point C and CapRelo saying, oh, well, yeah, this is the error. How do we fix it? Well, here's our API. Here's what we're doing here. And, again, the API contains code. So they did have access to source code in the API. That can't be lost on this Court.

ECF 152 (H'rng Tr.) 50:15–51:9.

Judge Docherty then denied CapRelo's motion to compel, explaining that:

5

> The solution for a bad interrogatory response like the one that defendants allege they got for Interrogatory Number 12 is that the plaintiffs are stuck with that answer, and that has a lot of practical consequences as this litigation goes forward. But having looked at the interrogatory, having looked at the response, then having come in here and listened to the arguments of the attorneys, I am not going to require that Interrogatory Number 12 be redone.
>
> I do, however, think that [counsel for Plus One] did provide additional information here today, which is that there is not an allegation that defendants had direct access to source code other than through bits and pieces that are embedded in API, but rather that the defendants were provided with so much information that it was possible for them to reverse engineer the source code. So with the answer already given, plus the information provided by [counsel for Plus One] today, I do find that Interrogatory Number 12 has been adequately responded to.

*Id*. 59:21–60:11. Then, in response to a request for clarification from Plus One about his ruling, Judge Docherty explained that by "stuck with," he meant that Plus One could be bound by the answer it gave to Interrogatory 12 because "when a lawyer pushes out an answer under Rule 11, that answer, you know, can be thrown in your face down the road." *Id*. 64:15–17.

Shortly thereafter, CapRelo filed the instant motion for sanctions, in which it asserts that Plus One and its counsel violated Rule 11(b)(1)[1] and (b)(3)[2] and seeks sanctions under Rule 11(c) that would strike the allegations of access to source code from the FAC and award CapRelo its fees accrued in preparing the instant motion. It is CapRelo's contention that, in light of Plus One's recent comments to Judge Docherty, "[t]he record establishes the falsity of Plus [One]'s allegations concerning access to source code," its "knowledge that those allegations were false and failure to conduct a reasonable inquiry into the factual support for them," and "a pattern of misconduct designed to prolong, multiply, and materially alter the landscape of this litigation." *See* ECF 179 (Mem. in Supp. of Mot. for Sanctions) at 18.

## II.   Discussion

"The primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct. . . ." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (quotation and bracket omitted). Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Relevant here,

---

[1] Under Rule 11(b)(1), a lawyer or unrepresented party presenting "any pleading, written motion, or other paper" to the court must certify that "[the item] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]"

[2] Under Rule 11(b)(3), a lawyer or unrepresented party presenting "any pleading, written motion, or other paper" to the court must certify that their "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

sanctions may be imposed under Rule 11 "when a pleading, written motion or other paper . . . is submitted to the court for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; or . . . if the allegations contained therein lack evidentiary support." *R&A Small Engine, Inc. v. Midwest Stihl, Inc.*, 471 F. Supp. 2d 977, 978–79 (D. Minn. 2007) (citing Fed. R. Civ. P. 11(b) and *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006)) (cleaned up). Before signing a document filed with the Court, Rule 11 requires counsel "to conduct a reasonable inquiry into the factual and legal basis for a claim." *Id.* at 979 (citing *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003)); *Igbanugo v. Minn. Office of Lawyers Prof. Resp.*, 56 F.4th 561, 567 (8th Cir. 2022) (same).

> To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the [party's] allegations, as well as a legal basis. Whether the attorney's inquiry is reasonable may depend on factors such as whether counsel had to rely on a client for factual information, or whether the attorney depended on forwarding counsel or another member of the bar. The District Court must determine whether a reasonable and competent attorney would believe in the merit of an argument.

*Coonts*, 903 F.3d at 747.

"Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma v. Crosscode, Inc.*, No. 21-cv-01766 (SRN/BRT), 2022 WL 816555, at *17 (D. Minn. Mar. 17, 2022) (quoting *Bus. Guides v. Chromatic Commc'ns Enters.*,

8

*Inc.*, 498 U.S. 533, 551 (1991)). "[T]he court may impose an appropriate sanction on any . . . party that violate[s]" Rule 11. Fed. R. Civ. P. 11(c)(1). Sanctions may be monetary or non-monetary, and may include an order requiring payment of reasonable attorney fees, but "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1031 (D. Minn. 2014) ("[D]eterrence is the primary purpose of Rule 11 sanctions.") (citation omitted).

"Access" allegations have been an important and fiercely contested part of this case. As discussed above, Plus One's assertion that CapRelo had access to source code has been strongly disputed since the outset, with CapRelo continuously maintaining that such access was implausible, if not impossible. Plus One, for its part, has not shied away from this claim in the face of CapRelo's pushback, offering a number a statements that have served to double down on the notion of an "invasive" access by CapRelo to the Point C source code. It is not surprising, then, that any apparent retreat from that allegation by Plus One would be met with indignation by CapRelo. However, for a number of reasons, the Court finds that CapRelo has failed to identify sanctionable conduct under Rule 11(b), and that even if it had, the sanctions sought under Rule 11(c) would be inappropriate under the circumstances.

***Rule 11(b)(1)***: First, the Court considers the purported violation of Rule 11(b)(1)—that the FAC's access allegations were made for the improper purpose of delaying or increasing this litigation. For CapRelo, the proof here is simply in the pudding: Plus One

9

added source code allegations in the FAC after CapRelo moved to dismiss the original complaint, and since CapRelo has always disputed that Plus One could prove access to source code, then any retreat by Plus One away from that allegation[3] during discovery reveals that the allegation was made only to avoid dismissal. But CapRelo's position assumes too much about the impact of the source code allegations under the law, generally, and on this Court, specifically.

To see where CapRelo begins with this argument, look no further than the opening paragraph of its brief in support of this motion: "In trade secret cases alleging the development of copycat software, a lynchpin issue is the defendant's access—or lack of access—to the source code embodying the software's features. . . . Software outputs or 'features' are not protectable trade secrets, so a defendant's lack of access to source code underlying such features is dispositive." ECF 179 at 5 (citing *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, No. 1:11-cv-02061-RLV, 2014 WL 12647878, at *6–8 (N.D. Ga. July 7, 2014) and *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222–30 (Cal. Ct. App. 2010)).

Setting aside whether making a factual allegation purely to avoid dismissal necessarily means that the allegation was improperly made, CapRelo's position depends upon a further sleight of hand. Here, a *legal* rule is proposed, and then the Court is asked to infer that a *factual* allegation was falsely made to skirt that rule. But it is not clear to the

---

[3] To be sure, Plus One does not agree that it has walked away from a previously made allegation, and nothing about this Court's discussion of the instant motion should be interpreted as suggesting that the Court has reached any opinion on this dispute.

Court that the proffered rule can be so simply accepted. Indeed, Plus One strongly disputes CapRelo's characterization of what is required under the law to sustain a trade secret case involving software, as well as CapRelo's assertions about what is required to prove access to source code. *See* ECF 194 (Opp. to Mot. for Sanctions) at 31–35 (arguing that "courts have found liability for misappropriation even where there is no evidence, or conflicting evidence, regarding access to source code," citing numerous cases, and distinguishing CapRelo's cases). Put simply, the question of whether source code access is necessary to sustain Plus One's claims is a messy, disputed, and potentially dispositive legal issue in this case. And it is noteworthy that the authority relied on by CapRelo thus far is not binding on this Court. Vicariously adjudicating a genuine legal dispute through a sanctions motion is inappropriate. Instead, the extent to which Plus One's claims rise or fall on whether CapRelo had access to source code is a matter better suited for summary judgment, where the issue can be more thoroughly briefed for the Court.

In the absence of clear consensus in this litigation about the legal necessity of these source code allegations, it is a lot harder for CapRelo to get to a Rule 11(b)(1) violation. To start, the Court disagrees with any black-and-white depiction of this litigation as having

been singularly defined by the specific allegations of source code access that sprang up[4] in the FAC. To be sure, although the allegation that source code was accessed and the plausibility of that allegation under the prevailing Rule 12(b)(6) standard were important factors in the Court's denial of CapRelo's motion to dismiss, the Court's conclusion on dismissal was based on the plausibility of the allegations in the FAC as a whole.

Moreover, even if it is true that Plus One has now abandoned its allegation that the "access" in this case was unequivocal "invasive access to source code," in favor of a more generalized form of access that enabled "reverse engineering," that would merely confirm CapRelo's own skepticism about the provability of direct source-code access. Such a shift would also align with this Court's earlier observations about access allegations, the extent they remained opaque and unproven, and the need for litigation through discovery to resolve them. The fact that the allegations may have helped stave off dismissal before crumbling in the light of discovery is not, on its own, a basis to sanction Plus One under

---

[4] The Court further notes that although "source code" access was not alleged in the original complaint, it did not appear for the first time in the FAC. Indeed, Plus One moved for a preliminary injunction, ECF 20, alongside its initial complaint. In support of that motion, Plus One filed a declaration by Andrew Kubitschek, the company's chief information officer. ECF 26. In that declaration, Mr. Kubitschek made a number of claims about source code, including that Plus One "regularly provided code snippets of Point C" to CapRelo for debugging the software integration with Walmart, *id*. ¶ 42, that "under the NDA," Plus One provided CapRelo with a "JSON" document, "which is the underlying code schema used to integrate Point C into a previously existing relocation benefits software application," *id*. ¶ 34, as well as his ultimate belief that "the CapRelo team who obtained this code could take it and integrate it into their existing application . . . and, along with the other documents discussed above, replicate Point C," *id*. ¶ 35. According to CapRelo, the JSON file described here is a "red herring" because it provides relatively generic, publicly available information and "does not provide "access" to source code "embodying Point C's features." ECF 179 at 23.

Rule 11(b)(1). Indeed, the "imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). And there is still no specific evidence before the Court to indicate that Plus One abused judicial process by making the source code allegations "for [the] improper purpose of" delaying dismissal of its claims.[5] If, as CapRelo asserts, Plus One is now boxed into a factual theory of access that cannot support its legal theories of liability, then CapRelo should seek summary judgment on the merits, not sanctions under Rule 11. *Douglas v. TD Bank USA*, No. 3:20-CV-00395-JR, 2021 WL 5861558, at *3 (D. Or. Aug. 11, 2021) (denying a motion for Rule 11 sanctions because it was a motion for summary judgment "posing as a Rule 11 motion"), *report and recommendation adopted sub nom. Douglas v. TD Bank USA, Nat'l Ass'n*, No. 3:20-CV-395-JR, 2021 WL 4524155 (D. Or. Oct. 4, 2021).

**Rule 11(b)(3)**: The Court next considers CapRelo's arguments for sanctions under Rule 11(b)(3)—that Plus One lacked the necessary evidentiary support to make the allegations about access in the FAC. The contention that Plus One lacked sufficient evidentiary support to add unqualified allegations about source code access to the FAC (and to then aggressively perpetuate those allegations in oral argument) presents a closer

---

[5] For example, the Eleventh Circuit has characterized an inquiry under Rule 11(b)(1) as being so subjective that determining whether something has been filed for an improper purpose would "likely require testimony" from the filing attorney. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 639 (11th Cir. 2010).

13

call than whether the allegations were made for an improper purpose of delaying dismissal. But these arguments also fail, at least for now.

"The standard certification for factual allegations under Rule 11(b)(3) is 'that there is (or likely will be) evidentiary support for the allegation, not that the party will prevail with respect to its contention.'" *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (quoting Fed. R. Civ. P. 11 Advisory Committee's Note (1993)). "As a result, sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Id.*; *see also Shirt v. Hazeltine*, No. Civ. 01-3032-KES, 2004 WL 7337408, at *1 (D.S.D. Jan. 7, 2004) (finding that under Rule 11(b)(3) "deliberate indifference to obvious facts warrants sanctions; evidentiary support that is merely weak does not") (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002); *cf Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 605 (D. Minn. 2011) ("Plaintiffs are not permitted to assert first, without basis, and discover later.") (citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)).

Part of the problem for CapRelo under Rule 11(b)(3) is reminiscent of a weakness in its Rule 12 motion for dismissal: it has always been a tough sell to see this case quite as spuriously as CapRelo would like to. Indeed, it has never been disputed that Plus One and CapRelo worked closely together under a confidentiality agreement to integrate Plus One's Point C software into a third party's systems, and there appears to be no real dispute that CapRelo launched a competing software application, similar to Point C, right in the midst of that confidential collaboration. Plus One and CapRelo may have wildly different ideas

14

about what, if any, protectable information actually changed hands during the company's work together on behalf of Walmart and whether any of that information actually informed the development of CapRelo's CompanionFlex. But it is difficult to see this as anything less than fodder for legitimate litigation.

Indeed, as this Court observed in adjudicating the motion to dismiss, this is not the type of facially tenuous case where a trade-secret plaintiff points, with one hand, to its own product, and with the other, to a new, similar, and competing product in the market and alleges without explanation that misappropriation *must have* occurred. *See* Hr'g Tr. 23:17–24 (noting an "extensive relationship [between the parties] where there are specific NDAs precisely because of the nature of the information that CapRelo was going to be able to have visibility into and their ability to use it"). Given this factual backdrop, it would take quite a bit for the Court to conclude that Plus One utterly lacked support for its source code allegations in the FAC or that it was otherwise objectively unreasonable for Plus One to make these allegations. Certainly, the Court would want to see more than some possible waffling about the source code allegation in front of Judge Docherty before it strikes a claim. And this Court observes that Plus One continues to maintain that CapRelo had access to source code through the API, albeit in "bits and pieces." This may not, as CapRelo contends, be enough to win the litigation, but it seems quite distinct from proving a lie.

To this point, the other reason that CapRelo's Rule 11(b)(3) arguments fail is that they are essentially premature. Indeed, discovery remains ongoing in this case. At the time of CapRelo's filing of the instant motion, more than seven months remained in fact

15

discovery. *See* ECF 234 (Second Amend. Sched. Order) at 2. Even now, expert discovery will continue for another two months. *See id*. at 3. Under any circumstance, the Court would be disinclined to find that an allegation was so lacking in evidentiary support as to be sanctionable while the facts of the case remain in development. This is particularly true where, as here, a party continues to argue vociferously[6] that its allegation not only had sufficient support when it was made, but that the allegation is still being pursued. Indeed, in opposing sanctions, Plus One states that its expert will testify that CapRelo did, in fact, access source code in a manner "sufficient . . . to be able to reverse engineer and otherwise misappropriate that code," ECF 194 at 27, while also disputing that the "reverse engineering" theory constitutes a meaningful departure from prior access theories and allegations, *id*. at 28. There is clearly some careful wording going on in these statements, and CapRelo may very well disagree that Plus One's expert can provide an admissible opinion to this effect or that Plus One's "reverse engineering" theory is anything but an about-face from earlier contentions. But given the extent to which so many issues remain in real dispute here about how Plus One intends to litigate the question of source code

---

[6] A more typical Rule 11(b)(3) sanctions scenario is one in which a plaintiff, at the end of the day, offers no evidence in support of a claim and offers no explanation or argument to mitigate that failure. *See, e.g.*, *Brown*, 276 F.R.D. at 600–06 (finding Rule 11 sanctions where case proceeded to discovery on the plaintiff's unqualified allegations of widespread employment discrimination against African-Americans but where the plaintiff could not ultimately identify any other African-American who she believed had been denied a promotion and where it was revealed that plaintiff had copied and pasted her discrimination allegations from a different lawsuit, against a different company).

16

access, then whether Plus One has made a sanctionable claim about that access under Rule 11(b)(3) cannot be determined at this time.

***Rule 11(c)***: Finally, even if Plus One had engaged in sanctionable conduct under Rule 11(b) by making the source code allegations in the FAC, the specific sanctions sought by CapRelo under Rule 11(c) would be denied within the Court's discretion as being coextensive with relief that can soon be secured through summary judgment.[7] Indeed, Plus One is quickly reaching a moment of truth for *all* of its allegations—source code access and otherwise. If, at summary judgment, CapRelo's legal arguments about the need for source code access in this case are correct, if it becomes clear that Plus One never had any evidence of source code access, and if Plus One's expert testimony offers no more than a fig leaf to conceal that reality, then sanctioning Plus One by striking verbiage about source code access from the FAC would be redundant to a judgment on those issues. Moreover, in such a scenario, nothing about this Order would preclude CapRelo from pursuing case fee shifting, pursuant to the federal trade secrets statute.

**III.    Order**

---

[7] The fact that the striking sanction sought by CapRelo so closely resembles a potential summary judgment win for CapRelo also calls into question whether that sanction is appropriately tailored toward deterrence of future bad acts or is instead aimed at securing victory in this case alone. Deterrence, of course, remains the true purpose of Rule 11 sanctions. *See, e.g.*, *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999) ("Sanctions are not merely to penalize those whose conduct may be deemed to warrant such a sanction, but also to deter those who might be tempted to such conduct in the absence of such a deterrent.") (internal quotations omitted and cleaned up).

Consistent with the foregoing, Defendant's Motion for Sanctions (ECF 177) is **DENIED**.[8]

Date: March 27, 2025                                     *s/Katherine Menendez*
                                                        Katherine Menendez
                                                        United States District Judge

---

[8] Plus One's request for CapRelo to be ordered to pay its fees incurred in responding to the motion for sanctions is similarly denied. *See* ECF 194 at 35–36. The Court does not agree that the instant motion was filed without basis. Like the Court's observations about the hard-fought nature of this litigation, generally, the Court finds that the motion for sanctions presents a reasonably close call, subject to the differing perspectives of the parties. This is especially true in light of the fact that part of the reason for the Court's denial of the motion is to allow for Plus One to vindicate its allegations about source code access at the summary judgment stage.